UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MICHAEL R. LAFFERTY,

                Plaintiff,

v.                                       Case No.  5:07-cv-347-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 19.) For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

On March 11, 2004, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging a disability onset date of August 1, 2001. (R. 46-48, 50, 192-94.) Plaintiff's application was denied initially and upon reconsideration. (R. 27-30, 32-33.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 34.) The ALJ conducted Plaintiff's administrative hearing on June 23, 2006. (R. 236-64.) The ALJ issued a decision

unfavorable to Plaintiff on September 18, 2006. (R. 17-25.) Plaintiff's request for review

of the hearing decision by the Social Security Administration's Office of Hearings and

Appeals was denied.  (R. 3-6.)  Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do

more than merely "create a suspicion of the existence of [a] fact," and must include

"such relevant evidence as a reasonable person would accept as adequate to support

the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[3] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[4] However, the

district court will reverse the Commissioner's decision on plenary review if the decision

applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law

defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment that can be expected to result in

death, or has lasted or can be expected to last for a continuous period of not less than

twelve months.[6] The impairment must be severe, making Plaintiff unable to do his

previous work, or any other substantial gainful activity which exists in the national

economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a

claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a

claimant does not have any impairment or combination of impairments which

significantly limit his physical or mental ability to do basic work activities, then he does

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments

meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the

Code of Federal Regulations, he is disabled.[11] Fourth, if a claimant's impairments do not

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *See* Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's

impairments (considering his residual functional capacity ("RFC"), age, education, and

past work) prevent him from doing other work that exists in the national economy, then

he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work

initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to

demonstrate that "other work" which the claimant can perform currently exists in the

national economy.[15] The Commissioner may satisfy this burden by pointing to the grids

for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has

a non-exertional impairment which significantly limits his or her basic work skills or when

the claimant cannot perform a full range of employment at the appropriate level of

exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996,
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III.  SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty eight (48) years old at the time of the ALJ's decision on September 18, 2006. (R. 17-25, 46.)  He has a high school education (R. 67, 241) and has previous work experience as an automobile windshield installer. (R. 63-64, 241.) Plaintiff contends that he has been unable to work since August 1, 2001 due to arthritis, carpal tunnel syndrome, depression and headaches. (R. 46, 63, 245-56.) Plaintiff is insured for benefits through December 31, 2003. (R. 27.)

---

[17](...continued)
1003 (11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See* id.

[21] *See* Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

After considering Plaintiff's testimony and the medical evidence, the ALJ determined that Plaintiff's degenerative joint disease of the hand is a severe impairment. (R. 21.) However, the ALJ determined that Plaintiff's affective disorder and complaints of chronic pain in his neck, shoulders, elbows, and knees were non-severe. (R. 21-22.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 22.)

The ALJ then found that Plaintiff retained the RFC to perform light work activity with no repetitive use of his hands. (R. 22.) After finding that Plaintiff could not perform his past relevant work as an automobile windshield installer, the ALJ consulted a vocational expert ("VE"). (R. 23-24.)  Based on the VE's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 24.)

The record evidence shows that Plaintiff has a history of degenerative joint disease of his hands bilaterally. Plaintiff consistently complained of chronic pain, numbness and tingling in his hands. (R. 105, 106, 115, 118-21, 158-60.) He also reported having difficulty picking up and holding objects, and writing. (R. 118.)  Multiple examining physicians noted a significantly decreased grip strength and a reduced range of motion in Plaintiff's wrists and digits bilaterally. (R. 105, 121, 159, 161.) A physician at Community Health Services noted swelling in his hands during a routine examination in August 2002. (R. 105.) In July 2003, a treating physician noted Plaintiff's inability to

close his hand or make a fist. (R. 186.)  X-rays of Plaintiff's hands conducted in August

2003 revealed mild degenerative changes. (R. 111, 184.)  In February 2003,

examination revealed positive Phalen's sign[22] in both of Plaintiff's hands. (R. 187-88.) In

2002 and 2004, examining physicians observed positive Tinel's sign in Plaintiff's wrists

bilaterally. (R. 105, 121.) While several medical health care providers refer to Plaintiff's

"history of bilateral carpal tunnel syndrome," the record does not include any nerve

conduction studies confirming this diagnosis.[23]

The medical records also reflect Plaintiff's subjective complaints of chronic pain

in his neck, shoulders, elbows, and knees. However, there is minimal objective

evidence to substantiate Plaintiff's alleged symptoms. A lab report of blood work

screening for arthritis in January 2003 was negative. (R. 112-13.) An x-ray of Plaintiff's

cervical spine in February 2003 was essentially normal and demonstrated only minimal

joint space loss with no evidence of spurring or subluxation. (R. 114.)  Although an x-ray

of Plaintiff's left knee apparently revealed mild degenerative changes,[24] Plaintiff's gait

was consistently noted as being normal without an assistive device. (R. 121, 159.)

In May 2004, Plaintiff was examined by Dr. Edward L. Demmi at the request of

the Division of Disability Determinations. (R. 120-22.)  During his examination, Dr.

---

[22] The Phalen's maneuver and the Tinel's test are both commonly used to detect carpal tunnel syndrome. *See* NAT'L INST. OF NEUROLOGICAL DISORDERS & STROKE, *Carpal Tunnel Syndrome Fact Sheet* (Nat'l Inst. Health, Pub. No. 03-4898, 2002); DORLAND'S MEDICAL DICTIONARY, *Phalen Maneuver* and *Tinel Sign* (2007).

[23]See e.g., R. 105.  During one of his consultative examinations, Plaintiff reports he has a history of carpal tunnel syndrome diagnosed by an EMG study. (R. 158.) However the results of the EMG study are not before the Court.

[24] (R. 121.) The x-ray report is not before the Court, this information comes from Dr. Demmi's consultative report.

Demmi observed normal range of motion and no swelling, trophic changes, or muscle weakness in Plaintiff's shoulders, elbows and knees. (R. 120.) There was decreased range of motion fo the cervical and lumbar spines and significant, diffuse tenderness throughout the entire neck with any light palpation. Plaintiff noted that moving his neck increased the pain he experienced in his hands.   Plaintiff's grip strength was 1/5 in the right hand and 2/5 in the left hand.  Dr. Demmi noted that Plaintiff could not hold a piece of paper in opposition without losing strength and that he had difficulty writing with a pen.  Straight and seated leg raises were normal.  Plaintiff's gait was normal and Plaintiff did not need an assistive device.   Dr. Demmi's diagnosis was chronic cervical discomfort with upper extremity weakness; history of bilateral carpal tunnel syndrome; history of chronic prostrate infections, currently on no medications; and history of chronic arthritis bilateral upper extremities, especially the hands.

On June 18, 2004, a non-examining state agency physician, Donald Warren Morford, M.D. completed a Physical RFC Assessment.  (R. 137-44.) Based on his review of the records, Moford found that Plaintiff could frequently lit 10 pounds and occasionally lift 20 pounds; stand and/or walk about 6 hours in an 8-hour workday; and sit for a total of about 6 hours in an 8-hour workday with no repetitive use of his hands. Morford found that Plaintiff could only occasionally climb, balance, stoop, kneel, crouch, or crawl.  He further found limitations in reaching all directions and handling and found that Plaintiff should avoid concentrated exposure to vibration and hazards.

In November 2004, a consultative examiner completed a Range of Motion Report Form in which he found that Plaintiff had a normal range of motion in his elbows, hips, knees, ankle and lumbar spine but a decreased range of motion in Plaintiff's shoulders, wrists, hands  and cervical spine. (R. 161-62.)

With respect to Plaintiff's alleged affective disorder, Plaintiff claimed he suffered from a mental impairment for the first time in his disability report on appeal in March 2005. (R. 96.) In his initial applications, Plaintiff only alleged arthritis and carpal tunnel syndrome impaired his ability to work. (R. 63, 70, 80.) Plaintiff claimed that his depressed mood was primarily related to his financial problems, his physical complaints and his corresponding inability to work as he had in the past. (R. 96.)

Moreover, Plaintiff never sought treatment from a mental health care provider and he denied taking any psychotropic medications. (R. 115-16.) Plaintiff reported to Dr. Rodney A. Poetter for a consultative psychological examination in May 2004. (R. 115-17.)  Dr. Poetter found Plaintiff was alert and oriented, with normal speech and concentration. On examination, Dr. Poetter noted short term memory deficits and Plaintiff's responses to structured questions assessing judgment and common sense reasoning skills were 50% accurate.  Although Dr. Poetter diagnosed Plaintiff with adjustment disorder with depression, he opined that the mental status examination was inconsistent with any major affective or thought disturbance. (R. 116-17.)  Dr. Poetter noted that Plaintiff would be a good candidate for vocational rehabilitation.  Additionally, during Dr. Demmi's examination of Plaintiff's mental status, he observed Plaintiff was

alert and oriented, and his mood, affect, and intellectual functioning were normal. (R. 121.)

Plaintiff's medical records were reviewed on two different occasions by state agency non-examining physicians who each completed a Psychiatric Review Technique form assessing the severity of Plaintiff's claimed mental impairments. In May 2004, the non-examining physician, Wayne Conger, Ph.D., found Plaintiff's mental impairments caused mild difficulties in maintaining concentration, persistence, or pace; but no restriction of activities of daily living, no difficulties in maintaining social functioning, and no episodes of decompensation. He concluded that Plaintiff did not suffer from a severe mental impairment. In his notes, Conger rejected Dr. Poetter's finding that Plaintiff had impaired short term memory because the finding was based on insufficient testing and also because Plaintiff's "high adaptive abilities could rule out a significant cognitive impairment." (R. 123-36.)

In October 2004, a second non-examining physician, Michael H. Zelenka, found Plaintiff's mental impairments caused mild difficulties in maintaining concentration, persistence, or pace; mild difficulties in maintaining social functioning; but no restriction of activities of daily living, and no episodes of decompensation. He concluded that Plaintiff may have symptoms of mild depression, but it was non-severe because such symptoms did not significantly affect Plaintiff's ability to function. (R. 145-57.)

On November 11, 2004, Plaintiff was seen by a physician at Rehabilitation Medicine Associates for a physical consultative evaluation. (R. 158-59.)[25]  Plaintiff's gait was intact, without an assistive device, Plaintiff's cervical spine range of motion was mildly limited and there was mild tissue tightness of the cervical and lumbar paraspinal musculature.  Motor grip strength was 3/5 bilaterally. [26]

## IV.  DISCUSSION

Plaintiff raises two issues on appeal. First, Plaintiff argues the ALJ's decision to reject Plaintiff's pain testimony is not supported by substantial evidence. Second, Plaintiff argues that the ALJ improperly relied on VE testimony that was based on a hypothetical that did not include all of Plaintiff's impairments.

With respect to the first issue, Plaintiff argues that the ALJ failed to give adequate reasons for his decision not to credit Plaintiff's complaints of pain due to arthritis in his shoulders, elbows, knees, wrists, and hands and so is not supported by substantial evidence. Specifically, Plaintiff points to Dr. Demmi's examination of Plaintiff which revealed decreased range of motion in Plaintiff's cervical and lumbar spine, diffuse tenderness in the muscles in Plaintiff's neck, decreased grip strength bilaterally (R. 122) and a report from a consultative examiner which noted a mildly decreased range of motion in Plaintiff's shoulders and cervical spine. (R. 161-62.)

---

[25] It appears as though this treatment record should be 5-pages long, however, the treatment record in the record on appeal is incomplete and only includes the first two pages.

[26] The Court notes that evidence submitted to the Appeals Council included a report from a neurologist and an orthopedic specialist. (R. 197-209, 217-35.) However, this evidence was not before the ALJ when the ALJ made his decision and Plaintiff has not challenged the Appeals Council's denial of review of the ALJ's decision in this appeal.

The Commissioner argues that the ALJ properly found that, based on the record before him, the objective medical evidence did not support Plaintiff's argument that he had an impairment or combination of impairments that imposed limitations greater than those specifically found by the ALJ in his assessment of Plaintiff's RFC.

In evaluating a disability, the ALJ must consider all of a claimant's impairments, including his subjective symptoms such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[27]  Where, as here, an ALJ decides not to fully credit a claimant's testimony about subjective complaints concerning the intensity, persistence and limiting effects of symptoms, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[28]  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[29]

Although the ALJ did not find Plaintiff's complaints concerning the intensity of his symptoms in his neck, shoulders, knees and elbows entirely credible, the ALJ did accord more weight to Plaintiff's complaints of pain in his hands and wrists.  While clinical findings concerning limitations related to Plaintiff's pain in his neck, elbows, knees, and shoulders are minimal - there are several positive clinical findings to support the existence of limitations arising from Plaintiff's problems with his hands and wrists.

---

[27] 20 C.F.R. § 404.1528.

[28] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence); Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[29] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

Indeed, in addition to x-rays showing mild degenerative changes in Plaintiff's hands, several doctors also noted decreased grip strength and positive Phalen's and Tinel's tests. Moreover, the Range of Motion Report Form showed that Plaintiff had significant restrictions of movement in his wrists and hands.  (R. 161-62.)   Finally, a non-examining state agency physician reviewed Plaintiff's medical records and concluded that Plaintiff was capable of light work with no repetitive use of his hands. (R. 137-44.)

With respect to Plaintiff's complaints of pain in his neck, shoulders, knees and elbows, the ALJ articulated specific reasons for rejecting Plaintiff's credibility as to the limiting effects of these symptoms, and the reasons are supported by substantial evidence in the record.  First, the ALJ discussed and relied upon the medical evidence from Dr. Demmi.  While Dr. Demmi noted decreased range of motion of the cervical and lumbar spines and significant tenderness in Plaintiff's neck, he did not outline any resulting functional limitations.  Moreover, Dr. Demmi reported that Plaintiff had negative straight leg raise tests, a normal gait without an assistive device, and normal Romberg and cerebella function.  The ALJ also pointed to x-ray results showing only minimal degenerative changes in Plaintiff's cervical spine and mild degenerative changes in Plaintiff's knee. The ALJ also noted that the only test for arthritis in the record was negative.

Because the ALJ cited specific reasons for finding Plaintiff's testimony less than fully credible, and his reasons are supported by evidence of record, the ALJ did not err in his credibility determination.

Turning to Plaintiff's second argument on appeal, Plaintiff challenges the ALJ's reliance on VE testimony and argues that the hypothetical did not include all of Plaintiff's severe impairments which are documented by the evidence of record.    The ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments when presenting a hypothetical question to a VE.[30]  The hypothetical, however, need only include such limitations as are supported by the record.[31]

Based on his careful consideration of the entire record, including Plaintiff's testimony, the ALJ determined that Plaintiff had the RFC to perform light work activity[32] with no repetitive use of his hands. (R. 22.) At the hearing, the ALJ asked the VE the following hypothetical question:

> [A]ssume that the claimant's age, education and work experience are as he testified. And we'll take the state agency assessment dated January 28, 2005. . . . the assessment is for occasional lifting up to 20 pounds, frequently lifting up to ten pounds and about six of eight hours standing and walking, six of eight hours sitting. Some limitations in pushing and pulling. . . Limit to occasional . . . fingering and feeling and so forth. Restricted to only occasional repetitive use of the hands or involving gross dexterity of reaching. . . . In other words, he's limited to light repetitive, non-repetitive work. Would there be jobs existing in significant number in the national economy he could perform?"

[30]  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[31]  See id.

[32] 20 C.F.R. § 404.1567(b). The guidelines define light work as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . .

(R. 255-59.) In response to the hypothetical, the VE opined that Plaintiff was capable of performing a variety of unskilled and semi-skilled light work and sedentary positions including but not limited to: communication type jobs, appointment clerk, surveillance system monitor, and dispatcher. (R. 259-60.)

Plaintiff argues that the hypothetical was incomplete because it failed to address Plaintiff's affective mood disorder and subjective complaints of pain in his neck, shoulders, knees and elbows. However, the functional limitations resulting from each of those conditions were considered by the ALJ during the ALJ's assessment of Plaintiff's RFC.[33] The ALJ considered all of Plaintiff's symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. Plaintiff asserts that the ALJ failed to include the combined effects of Plaintiff's exertional and non-exertional limitations in his hypothetical to the VE.

With respect to the affective mood disorder, Plaintiff notes that Dr. Poetter conducted a psychological examination of Plaintiff and diagnosed Plaintiff with an adjustment disorder with depressed mood and that the Social Security Administration's Disability Determination and Transmittal form noted the diagnosis "Affective/Mood disorder." Although Dr. Poetter diagnosed Plaintiff with adjustment disorder with depression, he opined that the mental status examination was inconsistent with any

---

[33] The ALJ found the Plaintiff was capable of performing light work subject to the limitation that Plaintiff was to avoid repetitive use of his hands. (R. 22.)

major affective or thought disturbance and he thought that Plaintiff would be a good candidate for vocational rehabilitation. (R. 116-17.)

Moreover, while the Social Security Administration listed Affective/Mood Disorder as a secondary diagnosis on its Disability Determination and Transmittal form,"[34] it is not the diagnosis but, rather, the "functional limitations caused by a condition . . . that determines disability."[35] The mere fact that Plaintiff has been diagnosed with a mental condition is not enough. None of the medical evidence supports a finding that Plaintiff's mood disorder has impaired his ability to perform basic work activities.[36] All examinations of Plaintiff's mental status revealed that he was alert and oriented, with a normal mood, affect, and intellectual functioning. Plaintiff never sought mental health treatment and never took medications to treat a mental health condition. In fact, Plaintiff failed to claim he even had any sort of mental impairment until his appeal of the initial decision on his applications for benefits. Additionally, the non-examining state agency psychologists who reviewed the evidence, including Dr. Poetter's report, found that Plaintiff did not have a severe mental impairment. Accordingly, the ALJ properly found that Plaintiff's affective/mood disorder caused no limitations on his ability to work.

Plaintiff also argues that Plaintiff's subjective complaints of pain should have been incorporated into the VE's hypothetical. However, the ALJ is only required to

---

[34] (Doc. 16, p.6.)

[35] Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); *see also* SSR 82-52.

[36] Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28.

include those impairments which cause limitations and such limitations are supported by the record. The ALJ incorporated the Plaintiff's complaints of wrist and hand pain into the hypothetical when he limited Plaintiff to occasional non-repetitive use of his hands. And as discussed above, the ALJ properly found Plaintiff's complaints of disabling pain in the neck, shoulders, elbows and knees as not entirely credible.  Furthermore, Plaintiff fails to identify any specific limitations that he believes were improperly omitted from the hypothetical.

Accordingly, substantial evidence supports the ALJ's conclusion that Plaintiff was capable of a limited range of light work. Therefore, because the hypothetical presented to the VE fully incorporated all of the limitations associated with Plaintiff's RFC, the ALJ did not err in relying on the VE's testimony that Plaintiff was capable of performing jobs which exist in significant numbers in the national economy.

### V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 30, 2008.

Copies to:

    All Counsel

GARY R. JONES
United States Magistrate Judge